IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAVETTE ESPARZA,                        §
                                        §
                    Plaintiff,          §
                                        §   Civil Action No. 3:12-CV-0662-D
VS.                                     §
                                        §
BANK OF AMERICA, N.A., et al.,          §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Davette Esparza ("Esparza") against defendants Bank of

America, N.A. ("BOA") and Roderick Wilson ("Wilson") alleging violations of the Family

and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*., the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Texas Commission on

Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001- 21.556 (West 2006),

defendants move for summary judgment and Esparza moves for partial summary judgment.

For the reasons that follow, the court grants defendants' motion, denies plaintiff's motion as

moot, and dismisses this suit with prejudice.

I

Esparza was employed by defendant BOA from 2003 until she was terminated in

2011.[1]  In 2003 she was hired as a personal banker, and in 2008 she was promoted to the

---

[1]Because both parties move for summary judgment, the court will recount the
evidence that is undisputed and, if it is necessary to set out evidence that is contested, will
do so favorably to the party who is the summary judgment nonmovant in the context of that

position of Assistant Manager at the Bedford Banking Center.  In November 2010 Esparza was promoted to the position of Banking Center Manager of the Wheatland Banking Center. Esparza did not have to "post" for either promotion.  In her position as Banking Center Manager, she was the most senior associate in the Wheatland Banking Center and was responsible for all aspects of the banking center's operations, including establishing schedules for banking center employees, assigning daily tasks, disciplining employees, and focusing employees' efforts on any area of the banking center she felt necessary. Esparza reported to defendant Wilson, the Consumer Market Manager, and Wilson reported to Melissa Gonzalez ("Gonzalez"), the Consumer Market Executive.

Since 2007 Esparza has suffered from chronic arthritis, lumbago lumbar radiculopathy and herniated/bulging disks.  These conditions limit Esparza's ability to stand, walk, lift, and reach, and, when in an active state, impair her ability to work due to pain in her neck, lower back, and knees.  Esparza also had a medical impairment related to her feet that required surgery in October 2010 and again six weeks later.  The swelling in Esparza's feet continued for six months after her surgery, and Esparza maintains that she has still not completely recovered.

Before she was promoted to Banking Center Manager at the Wheatland Banking Center, Esparza's managers were flexible and allowed her to cover her absences for surgery,

_____

evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*,750 F.Supp.2d 712, 718 n.4 (N.D. Tex. Oct. 25, 2010) (Fitzwater, C.J.) (citing *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

therapy, and doctor visits by using vacation and sick leave.  They also allowed her to sit and stand as needed, and, with these accommodations, Esparza met or exceeded expectations in BOA's assessments of her performance.

In May 2011, two months after Wilson became Esparza's manager, a mock audit of the Wheatland Banking Center identified a number of violations of BOA policies (referred to as "findings").  The findings included failing to perform surprise cash counts, conducting improper wire transfers, and not properly documenting three transfers.  On June 9, 2011 a Banking Center Control Review ("BCCR") audit identified fifteen findings, three of which were issues that had allegedly been identified in the mock audit of the banking center. Although the Wheatland Banking Center received a failing BCCR score of 89.6% (a score below 92% was considered failing), Esparza maintains that seven of the fourteen banking centers under Wilson's management had scores below 92%, and two had scores lower than the Wheatland Banking Center score.

On June 13, 2011 Esparza and her Assistant Banking Center Manager, Thomas Mungia ("Mungia"), were issued formal written warnings.  Esparza's written warning addressed the audit results and her overall failure to meet performance expectations.  It stated that she was "expected to demonstrate immediate and sustained improvement in the areas specifically addressed," and that her failure to meet these expectations could result in "further disciplinary action up to and including termination."  Ds. Dec. 14, 2012 App. 38-39.[2]

---

[2]For clarity, because there are cross-motions pending, the court will cite the parties' briefs and appendixes by the date filed.

Later that month, the Wheatland Banking Center's BCCR results were addressed during a leadership call with all of the region's Banking Center Managers. During this call, Wilson and Gonzalez made a PowerPoint presentation in which they showed a slide that referred to the Wheatland Banking Center location and stated, "This is what FAILURE looks like." P. Jan. 2, 2013 App. 88. Afterwards, Esparza called BOA's Advice and Counsel Department ("ACD") to file an internal discrimination complaint against Wilson and Gonzalez. She complained that Gonzalez was very harsh during the call and that other banking centers with similar audit scores did not receive the same treatment. In response, the ACD investigated the complaint and assured Esparza that her concerns would be addressed with Wilson and Gonzalez. BOA maintains that the ACD interviewed Gonzalez and Wilson and concluded that Gonzalez's conduct had not been inappropriate.

On June 15, 2011 Esparza left work to see a doctor because of pain she was experiencing in her back. The following day, pursuant to BOA's FMLA policy, Esparza requested FMLA leave by contacting Aetna, the bank's leave administrator. In support of her request, Esparza submitted documentation from her doctors stating that she suffered from "chronic arthritis pain" and would need to miss work periodically "during her flare ups of pain." Ds. Dec. 14, 2012 App. 99. Aetna approved Esparza's request for intermittent FMLA leave and designated her June 15 and 16 absences as FMLA leave.[3] According to Esparza, in the six months she worked for Wilson, she attempted many times to discuss her medical

---

[3]Esparza subsequently requested FMLA leave for July 7, 2011, July 8, 2011, August 9, 2011, and September 19-23, 2011. Aetna approved all of these requests.

condition, physical limitations, and need for intermittent leaves of absence, but Wilson did not respond regarding these issues.  Esparza also specifically requested a transfer to a standard hour bank (as opposed to the Wheatland Banking Center, which was an extended hour location), but Wilson refused to transfer her.  According to Esparza, Wilson informed her that, if she wanted to transfer, she would need to go onto BOA's career site, find an open banking center, and apply.  Wilson also told Esparza that he did not have any standard hour banking locations under his management, which Esparza maintains was untrue.

BOA posits that, despite having received a written warning on June 13, 2011, Esparza's performance continued to decline.  On July 7, 2011 Wilson visited the Wheatland Banking Center and discovered that Esparza had conducted fewer than one third of the number of seller observations she was required to complete.  Wilson requested that Esparza develop and present him with an action plan to address her declining professional treatment scores.  BOA maintains Esparza missed the deadline for submitting her action plan by three days.

According to BOA, on July 8, 2011 Mungia telephoned Wilson and complained that Esparza was failing to attend weekly leadership meetings, was interviewing for jobs outside BOA during work hours, and was leaving the banking center without a supervisor's being present, creating an adverse impact on BOA's customers.  BOA maintains that Mungia also told Wilson that several associates had complained to him about Esparza.

Esparza alleges that, on this same date, BOA's ACD finally communicated Esparza's internal discrimination complaints to Gonzalez and Wilson.  According to Esparza, Gonzalez

and Wilson complained that Esparza's intermittent FMLA leave "meant she 'was not there' to receive help with performance."  P. Feb. 7, 2013 Br. 7 (emphasis omitted).  Esparza maintains that Wilson told the ACD that she failed to keep appointments with him when he attempted to comply with her request for more of his time.  She alleges that he relayed to a different ACD counselor that he had received complaints from Mungia about Esparza's not being at work when she was supposed to be there and not supporting the associates.  Wilson was advised to interview all of the associates to determine whether there was an issue that needed to be addressed.

According to BOA, Wilson interviewed ten of the Wheatland Banking Center associates, four of whom confirmed that, on several occasions, Esparza had left the banking center without a supervisor's being present, and they had to turn customers away as a result. BOA maintains the associates also shared other concerns about Esparza's leadership, including that she screamed at associates in front of other associates, was unable to answer questions about their jobs or how to perform certain duties, and had harassed associates who called in sick.  Two of the associates Wilson interviewed allegedly reported that they had complained to BOA's ACD about Esparza.

According to BOA, as a result of Esparza's continued poor performance and failure to meet deadlines, and the concerns raised by her staff, Wilson and Gonzalez met with her on July 18, 2011 and issued her a final written warning for "Failure to Meet Performance Expectations."  Ds. Dec. 14, 2012 App. 40-41, 52.  The warning identified several perceived performance deficiencies, including Esparza's failure to meet five different deadlines, failure

- 6 -

to perform the appropriate number of seller observations, and her decision to leave the banking center unattended.  The final written warning again notified Esparza that her continued failure to meet expectations could result in termination.  Esparza alleges that Wilson also verbally warned Esparza about sitting when performing her duties.

On July 21, 2011 Esparza submitted a note from her doctor indicating that she needed to sit every thirty minutes for three to four minutes at a time.  Esparza admitted that, as Banking Center Manager, she had complete discretion over when she sat or stood and was able to "sit down as needed."  Ds. Dec. 14, 2012 App. 12.

On July 26, 2011 Melody Valdez ("Valdez"), a personal banker at the Wheatland Banking Center, reported a security violation to BOA's ethics hotline.  She stated that Esparza had opened an account using Valdez's username and password ("NBK"),[4] in violation of BOA policy.  Valdez reported that the violation had occurred on July 20, 2011, when Valdez encountered a problem opening a new account while assisting a customer in her office, prompting the customer to request to speak to the manager.  She stated that she asked Esparza to come to her office to assist with the issue, but Esparza told her to leave the office and assist in the bank lobby.  When Valdez attempted to sign off from her computer before leaving, Esparza allegedly directed her to remain signed on.  Esparza allegedly

---

[4]Each associate at BOA is assigned a unique identification "NBK," similar to a username and password, that allows the associate to log in to the bank's computers.  BOA is able to track all banking activity conducted under an associate's NBK.

remained in Valdez's office with the customer for thirty to forty minutes thereafter.  Later that day, Valdez discovered that Esparza had opened an account under Valdez's NBK.

Cheri Lollman ("Lollman"), a senior fraud investigator for BOA's Corporate Security Department, investigated Valdez's ethics hotline complaint and concluded that Esparza had opened the account under Valdez's NBK, in violation of BOA policies and procedures. Lollman reported her findings to the ACD, and the ACD recommended that Esparza's employment be terminated as a result.

In August 2011 Esparza's banking center experienced a $2,240 loss from a transaction in which an individual impersonated a customer by using an improper form of identification, which was accepted in violation of BOA policies and procedures.  Wilson allegedly discussed the transaction at length with Esparza and encouraged her to take disciplinary action against the teller who, according to Esparza, had conducted the transaction.  The following week, Mungia called Wilson regarding the $2,240 loss, and allegedly informed Wilson that Esparza had instructed him to issue a final written warning to the teller who had conducted the transaction, but that Mungia was uncomfortable disciplining the teller because Esparza had approved the transaction.  Wilson requested a copy of the transaction and discovered Esparza's NBK on it, which confirmed that Esparza had approved the transaction. According to BOA, Wilson's discovery that Esparza had approved the improper transaction gave Wilson serious concern about Esparza's judgment, because not only had she accepted an improper form of identification that resulted in a $2,240 loss, she had also failed to disclose that she had been involved in the transaction, and she had instructed Mungia to issue

a final written warning to another associate for her own mistake.  Wilson called the ACD to seek advice regarding how to respond. He ultimately decided to await the results of the pending security investigation being performed by Lollman before making a final decision on the appropriate disciplinary action.

During the course of the foregoing events, Mungia expressed to Wilson several times that he would like to be transferred to a different banking center because Esparza's absences were making work at the Wheatland Banking Center "stressful."  P. Jan. 31, 2013 App. 149. According to Esparza, Mungia was eventually transferred to a different banking center "upon request and without having to post and without even knowing the job was open."  P. Feb. 7, 2013 Br. 11.

On September 2, 2011 BOA conducted another mock audit of the Wheatland Banking Center.  The audit revealed that the banking center was violating policies and procedures for shipments of cashier checks, was not performing the requisite number of cash counts, was improperly performing the cash counts that were conducted, was improperly conducting wire transfers, and was not adhering to the policies and procedures relating to cash box lists.

On September 16, 2011 Wilson spoke with Lollman about the results of her security investigation.  According to BOA, Lollman told Wilson that she had determined that Esparza had opened a customer account using another employee's NBK, and that she and the ACD agreed that it was appropriate to terminate Esparza's employment.  Wilson allegedly decided to terminate Esparza's employment based on this information, the $2,240 loss incurred in the transaction that Esparza had approved, and the continued poor performance of Esparza's

banking center (as evidenced by the most recent mock audit).  Wilson met with Esparza that day and informed her that her employment was being terminated for overall poor performance.

After her termination, Esparza filed a charge of discrimination with the Equal Employment Opportunity Commission and Texas Workforce Commission-Civil Rights Division and received notice of her right to sue.  Esparza then filed suit against BOA in state court alleging claims for violations of the FMLA and TCHRA.  She amended her petition to seek additional relief under the ADA.  After BOA removed the case to this court, Esparza filed an amended complaint adding Wilson as a defendant.  BOA and Wilson now move for summary judgment seeking dismissal of all of Esparza's claims. [5] Esparza moves for partial summary judgment on her failure to accommodate claim under the ADA and on several of BOA's affirmative defenses.

---

[5]After arguing that they are entitled to summary judgment on other grounds concerning each of Esparza's claims, defendants contend that she is only asserting a claim against Wilson under the FMLA, not the ADA or TCHRA, and that the FMLA claim must be dismissed because Wilson was not Esparza's employer.  In response, Esparza argues that Wilson qualifies as someone who independently exercised control over the work situation, and that there is a fact issue concerning the control that Wilson exercised over Esparza's work situation.  She does not contend that she is asserting a claim against Wilson under the ADA or TCHRA.

Although the court concludes that both defendants are entitled to summary judgment for the reasons explained, it holds that Wilson is entitled to summary judgment for the additional reason that a reasonable jury could not find that he was Esparza's employer.

II

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet her or its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing party must go beyond the opposing party's pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater, J.). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court begins with Esparza's claims under the FMLA, turning first to her interference claim.

A

Esparza alleges that BOA and Wilson violated the FMLA by, *inter alia*, terminating her employment without providing her the entitlements guaranteed by the FMLA, refusing to grant her request to take intermittent leave, and by discriminating and retaliating against

her for having taken protected leave prior to her termination.  BOA and Wilson move for summary judgment, contending that they did not interfere with any of Esparza's FMLA rights.  They point to deposition testimony in which Esparza conceded that she was never denied any FMLA leave that she requested, and they posit that there is no evidence that their actions otherwise interfered with Esparza's taking FMLA leave.

Esparza maintains that she requested FMLA leave on September 7, 2011 and that her termination on September 16, 2011, three days before her leave was to commence, interfered with her FMLA leave.  She maintains that the "very close temporal proximity" of her request to her termination establishes that she was denied leave or that defendants failed to respect her entitlement to leave.  P. Feb. 7, 2013 Br. 17.  Esparza also maintains that there is substantial evidence of Wilson's hostility to her taking leave.  She cites Wilson's comment in the ACD notes from July 8, 2011, in which he stated that Esparza's intermittent leave was "taking her out of the bank" and attributed her performance issues to her "'not being there.'" *Id.*  Esparza also cites her declaration, in which she avers that Wilson expressed considerable irritation that she had to have a procedure performed on a Friday afternoon, even after she explained that she had no choice because it was the only time available.  She argues that Wilson's "silence" in response to her attempt to discuss leave "speaks volumes."  *Id.*  And as evidence of Wilson's "resentment" and "great hostility to her leave," she cites deposition testimony in which Wilson was unable to quantify the number of times he went to the Wheatland Banking Center to meet with Esparza and she failed to show up for a meeting because she was out of the bank on intermittent leave.  *Id.* at 18.  Finally, Esparza argues that

- 12 -

defendants can defend against an interference claim by showing they would have taken the same action absent the request for leave, and she argues that there is a complete failure by defendants to explain the timing of her termination.

B

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.  29 U.S.C. § 2615(a)(1).  The statute also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.  29 U.S.C. § 2615(a)(2).  Under § 2615(a)(1), an employer is prohibited from interfering with or restraining an employee from exercising, or attempting to exercise, her FMLA rights.  "The term 'interference with' includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'"  *Bell v. Dallas Cnty.*, 432 Fed. Appx. 330, 334 (5th Cir. 2011) (per curiam) (quoting 29 C.F.R. § 825.220(b) (2010)).  "With an interference claim, an employee must show that he was denied his entitlements under the FMLA, or, that an employer did not respect the employee's FMLA entitlements."  *Id.* (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)).

The evidence on which Esparza relies to demonstrate Wilson's alleged "hostility" to her taking leave is insufficient to permit a reasonable jury to find that defendants interfered with her FMLA rights.  Although the evidence may be relevant to her FMLA discrimination or retaliation claims, it fails to raise a genuine issue of material fact regarding whether BOA refused to authorize FMLA leave or discouraged Esparza from using such leave.  For

- 13 -

example, Esparza cites interview notes from the ACD that state "[Esparza] mentioned she

needed support and [Wilson] has been there but [Esparza] is not there.  [Gonzalez] states

[Esparza] has an intermittent leave which is pulling her out of the store."  P. Jan. 31, 2013

App. 26.  A reasonable jury could not find that these comments, made in the context of the

ACD's investigation of Esparza's complaints, relate to any request for FMLA leave such that

they prove that defendants interfered with Esparza's FMLA rights.

Esparza next argues that Wilson's "silence" in response to her attempts to discuss

leave interfered with her FMLA rights.  In the deposition testimony on which she relies,

however, Wilson testified that he did not respond to Esparza's emails regarding FMLA leave

because he had no role in approving or declining her requests.[6]  Accordingly, even viewed

---

[6]      Q.      So what is your role with respect to approving when
                 [Esparza] needed to take intermittent FMLA leave?
         A.      I don't have a role.  If she needed to take—the way I
                 understand intermittent leave is that it allows her to go to
                 any doctor's appointments or follow-up appointments as
                 necessary . . . .  She just lets me know, shoots me an
                 email saying, I need to be off.  And that's it.  I don't
                 approve or decline her taking the time off because it's
                 already been approved by Aetna . . . .
         Q.      Okay. So it's your testimony that [Esparza] would shoot
                 you an email saying, I need to be gone for these three
                 days, or this day, or these two hours; and you would just
                 take that as information and not respond?
         A.      End of conversation.  I didn't approve or decline any of
                 her leave.
         Q.      So you didn't—when she let you know she had to be
                 gone for intermittent leave, you didn't give her any
                 feedback or response?
         A.      There isn't any feedback to give her.  I can't tell her she
                 can't go.  I can't tell her when to go.  I can't tell her to

- 14 -

in a light most favorable to Esparza as the summary judgment nonmovant, the evidence does not support the reasonable finding that BOA interfered with any of Esparza's FMLA rights.

Likewise, the deposition testimony in which Wilson was unable to quantify the number of times he had been to the bank to see Esparza when she was out on intermittent leave does not relate to an FMLA leave request and would not permit a reasonable jury to find that Wilson or BOA interfered with any FMLA leave request or FMLA entitlement. Nor does Wilson's alleged "irritation" that Esparza scheduled a procedure for a Friday afternoon support an FMLA interference claim, because there is no proof that Wilson prohibited Esparza from using FMLA leave for the procedure or that he in any other way interfered with her FMLA entitlements.

In sum, aside from the FMLA leave that was scheduled to commence on September 19, 2011, which the court addresses below, Esparza either acknowledges,[7] or fails to cite evidence to dispute, that all of her FMLA requests were ultimately granted in full and that she received all requested FMLA entitlements. Defendants are therefore entitled to summary judgment dismissing this ground of her FMLA claim. *See, e.g., Smith v. CVS Caremark Corp.*, 2013 WL 2291886, at *4 (N.D. Tex. May 23, 2013) (Boyle, J.) (granting summary

---

switch appointments. She tells me she needs the time off
based on intermittent leave, and she's allowed to take it.

P. Jan. 31, 2013 App. 125-27.

[7]*See* Ds. Dec. 14, 2012 App. 13 ("Q: Did you ever apply for FMLA leave and have that application for leave denied? A: No.").

judgment on FMLA interference claim where plaintiffs failed to adduce evidence to dispute that employee's FMLA requests were ultimately granted and that employee received all her requested FMLA entitlements).

## C

The court concludes below that a reasonable jury could only find that Esparza was terminated because of continued poor performance, her actions surrounding the $2,240 loss, and for violating BOA security procedures by opening a customer account using another associate's NBK.  Accordingly, Esparza cannot recover on her FMLA interference claim based on BOA's termination of her employment three days before her FMLA leave was set to commence.  This is because where the "termination of [an employee] was otherwise appropriate [under the FMLA], any right to leave would have been extinguished" by the act of termination.  *Grubb v. Sw. Airlines*, 296 Fed. Appx. 383, 391 (5th Cir. 2008) (per curiam).

## IV

The court now considers Esparza's claim for retaliation under the FMLA.[8]

## A

Because Esparza relies on circumstantial evidence to support her FMLA claim, it is properly analyzed under the *McDonnell Douglas* burden shifting framework.  *See, e.g., Hunt*

---

[8]In her brief, Esparza characterizes her FMLA claim as one for "retaliation" and does not address a separate FMLA "discrimination" claim.  P. Feb. 7, 2013 Br. 19.  Because Esparza fails to argue a separate discrimination claim, the court assumes that she only intends to pursue an FMLA retaliation claim.  To the extent she also seeks to recover under the FMLA for discrimination, she has failed to produce sufficient evidence for a reasonable jury to find in her favor on the issue of pretext.

*v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) ("The Fifth Circuit

applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA.").

> To establish a prima facie case for . . . retaliation under the
> FMLA, a plaintiff must demonstrate that she is protected under
> the FMLA; she suffered an adverse employment decision; and
> that she was treated less favorably than an employee who had
> not requested leave under the FMLA or that the adverse decision
> was made because of her request for leave.

*Comeaux-Bisor v. YMCA of Greater Hous.*, 290 Fed. Appx. 724-25 (5th Cir. 2008) (per

curiam) (citing *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 384 (5th Cir. 1998)). "Once

an employee has established a prima facie case of retaliation, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the adverse employment

action." *Stroud v. BMC Software, Inc.*, 2008 WL 2325639, at *3 (5th Cir. June 6, 2008)

(FMLA case) (per curiam) (unpublished opinion). Where, as here, the plaintiff does not rely

on a mixed motive theory, "to survive summary judgment the employee must 'offer sufficient

evidence to create a genuine issue of fact . . . that (a) the employer's proffered reason is a

pretext for discrimination.'" *Id.* (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327,

333 (5th Cir. 2005)).[9] "Ultimately, [Esparza] must demonstrate that but for filing for FMLA

leave, she would not have been terminated." *Woodson v. Scott & White Mem'l Hosp.*, 255

---

[9]Although the Fifth Circuit has recognized that "mixed motive" claims are cognizable
under the FMLA, *see Richardson*, 434 F.3d at 334, there is no suggestion in Esparza's
amended complaint or response brief that she intends to pursue a mixed motives theory.
Accordingly, the court considers only whether she has raised a genuine issue of material fact
on pretext.

Fed. Appx. 17, 19 (5th Cir. 2007) (per curiam) (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999)).

## B

Defendants do not dispute the first two elements of Esparza's prima facie case.  But they contend that Esparza cannot satisfy the third element, contending there are no facts to suggest a causal connection between her requests for FMLA leave and her termination. Because defendants are entitled to summary judgment, the court will assume *arguendo* that Esparza can establish a prima facie case of retaliation.  The burden therefore shifts to defendants to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment decision.

## C

Defendants maintain that BOA terminated Esparza because of her declining and unacceptable performance as a Banking Center Manager, about which she had been repeatedly warned, her actions surrounding the $2,240 loss, and for violating BOA security procedures by opening a customer account using another associate's NBK.  The court holds that BOA has met its burden of articulating legitimate, non-retaliatory reasons for its decision.  *See, e.g., Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 Fed. Appx. 343, 346 (5th Cir. 2011) (per curiam) (holding that employer's reasons for terminating employee that included misusing company resources, improperly sending assistant on personal errands, improperly approving cell phone charges for assistant, abusing alcohol at company event,

and having great deal of difficulty getting along with supervisor were sufficient to shift burden back to plaintiff).

### D

The burden now shifts back to Esparza to show "by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty. Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted).

### 1

Esparza "may prove pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "[I]f the plaintiff created only a weak inference of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred[,] a court should not find the plaintiff has successfully proven retaliation." *Mauder*, 446 F.3d at 584 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)) (internal quotation marks omitted).

As evidence of pretext, Esparza relies on the following: "Wilson's i) hostility to Esparza's accommodations and leave, ii) mendacity, iii) refusing to give Esparza the benefit of the doubt, and iv) suspicious timing." P. Feb. 7, 2013 Br. 19. She also argues that defendants have offered "shifting stories" regarding the use of another associate's NBK and

that defendants' assertion that the videotape and Lollman's report were lost or destroyed constitutes evidence of pretext.  *Id.* at 19.

2

The court will first address Esparza's reliance on "shifting stories" regarding Lollman's report and the use of another associate's NBK.  Esparza cites notes from Lollman's investigation of the NBK issue that state that "[Valdez] was lobby leading during the times that the account was opened.  However, there are some times that [Valdez] is not visible in the lobby the entire time." P. Jan. 31, 2013 App. 40.  She also cites notes that there was "no proof" that Esparza instructed Valdez to leave her NBK open.  P. Feb. 7, 2013 Br. 20.  Yet Esparza does not dispute that, in these same notes, Lollman concluded that Esparza had violated BOA policy, and recommended "term[ination] for overall performance." P. Jan. 31, 2013 App. 41.  The evidence on which Esparza relies would not enable a reasonable jury to find that there were any "shifting stories" in connection with Lollman's investigation.  Moreover, defendants have introduced undisputed evidence that, before Lollman conducted the investigation, she had never met Esparza, and when Lollman conducted the investigation, she had no knowledge of whether Esparza had requested or taken FMLA leave.  "The issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for [the plaintiff's] termination." *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 899 (5th Cir. 2002).  Esparza has failed to present any evidence that would enable a reasonable jury to find that Lollman's recommendation that Esparza be terminated for violating BOA policy

- 20 -

regarding use of another employee's NBK was not one of the real reasons she was terminated.

3

As for Esparza's assertions of "mendacity" and "refusing to give Esparza the benefit of the doubt," *id.*, she has failed to support either with summary judgment evidence. Accordingly, neither is sufficient to raise a genuine issue of material fact.

4

Assuming that, in citing Wilson's "hostility to Esparza's accommodations and leave," P. Feb. 7, 2013 Br. 19, Esparza intends to refer to the evidence cited in support of her FMLA interference claim, a reasonable jury could not find on the basis of this evidence that BOA did not in fact terminate Esparza because of her declining and unacceptable performance as a Banking Center Manager (about which she had been repeatedly warned), her actions surrounding the $2,240 loss, and her violation of BOA's security procedures by opening a customer account using another associate's NBK.  In other words, even if the court accepts as true that Wilson attributed Esparza's performance issues to her "not being there," that he expressed irritation that Esparza had to have a procedure performed on Friday afternoon, and that he responded with silence to Esparza's "attempt to discuss leave," these facts would not enable a reasonable jury to find that BOA terminated Esparza's employment for any reason other than the ones it has offered.

5

Concerning Esparza's assertion of "suspicious timing" between her termination and the commencement of her FMLA leave, although "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment," *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999), defendants have produced evidence that explains the timing of BOA's termination decision, and Esparza has not adduced other significant evidence of pretext. The evidence shows that Wilson learned the results of Lollman's investigation on September 16, 2011 and that, based on this information, Esparza's actions surrounding the $2,240 loss, and the continued poor performance of Esparza's banking center, as evidenced by the most recent mock audit (conducted September 2, 2011), Wilson decided to terminate Esparza's employment and did so on the same day. Esparza has not introduced other significant evidence of pretext evidence that, in combination with the allegedly suspicious timing, would enable a reasonable jury to find that BOA terminated her employment in retaliation for exercising her rights under the FMLA.

6

In addition to the foregoing reasons for concluding that Esparza has failed to raise a genuine fact issue concerning pretext, Esparza has not addressed BOA's other two proffered legitimate, nondiscriminatory reasons for her termination: her declining and unacceptable performance as a Banking Center Manager, about which she had been repeatedly warned, and her actions surrounding the $2,240. This court has repeatedly held that, where an

- 22 -

employer offers more than one legitimate, nondiscriminatory reason for taking the adverse employment action that the plaintiff challenges, "'[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.'" *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *7 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010); *see also Jackson v. Watkins*, 2009 WL 1437824, at *8 (N.D. Tex. May 21, 2009) (Fitzwater, C.J.), *aff'd*, 619 F.3d 463 (5th Cir. 2010).  As the Fifth Circuit has explained in the analogous context of a discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*:

> Because our precedent is clear that a plaintiff asserting a Title VII claim must rebut each of the defendant's nondiscriminatory reasons in order to survive summary judgment, [plaintiff's] contention that he is required to rebut only some of [defendant's] reasons is without merit.  We have long recognized that to satisfy step three of the *McDonnell Douglas* framework, a plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates. Where a plaintiff falls short of his burden of presenting evidence rebutting *each* of the legitimate nondiscriminatory reasons produced by the employer, summary judgment is appropriate. Accordingly, [plaintiff] cannot withstand summary judgment without providing sufficient evidence to rebut each of [defendant's] nondiscriminatory reasons.

*Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (per curiam) (citations, quotation marks, and brackets omitted).  Additionally, "[t]he evidence offered to counter the employer's proffered reasons must be substantial." *Kretchmer*, 2009 WL 854719, at *7 (citing *Wallace*, 271 F.3d at 220).  Because Esparza does not dispute that BOA terminated

- 23 -

her employment based on her declining performance and her actions surrounding the $2,240 loss, she has failed to establish that each of the reasons defendants have provided for her termination are pretextual and are not the real reasons BOA decided to terminate her employment.

Accordingly, defendants are entitled to summary judgment dismissing Esparza's FMLA retaliation claim.

V

The court turns next to Esparza's claim that BOA failed to accommodate her disability, as required under the ADA.

A

The ADA prohibits discrimination in employment against a qualified individual on the basis of her disability. Defendants assume that Esparza's medical conditions rise to the level of a disability.[10]  Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).

Defendants move for summary judgment on this claim, contending that the only accommodation Esparza requested was the option to sit for several minutes each hour during

_____

[10]In their response to Esparza's motion for partial summary judgment, they dispute that Esparza has a disability within the meaning of the ADA.

- 24 -

the work day.  They maintain that her testimony establishes that she was able to sit as needed

throughout the day.  Esparza responds that she requested other accommodations and that

BOA failed to accommodate her disability by "disciplining" her for sitting while performing

lobby leading, by "disciplin[ing] [her] for leaving the Bank for doctor's appointments

because the assistant manager was not on duty," P. Feb. 7, 2013 Br. 14-15, and by failing to

accommodate her request to be transferred to a standard hour banking center.  She maintains

that BOA did not grant her the accommodations she requested and did not engage in good

faith in the interactive process.

B

"An employee who needs an accommodation because of a disability has the

responsibility of informing her employer."  *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d

606, 621 (5th Cir. 2009).  Accordingly, "where the disability, resulting limitations, and

necessary reasonable accommodations, are not open, obvious, and apparent to the employer,

the initial burden rests primarily upon the employee . . . to specifically identify the disability

and resulting limitations, and to suggest the reasonable accommodations."  *Id.* (quoting

*Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996)).  Once an employee makes

such a request, "the employer is obligated by law to engage in an 'interactive process': 'a

meaningful dialogue with the employee to find the best means of accommodating that

disability.'"  *Id.* (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)).

Esparza alleges that she submitted medical documentation to Wilson in support of her

accommodation request and that "Wilson was on notice that Esparza needed to sit and take

- 25 -

intermittent leaves of absence as an accommodation." P. Feb. 7, 2013 Br. 7. She cites to a

"Patient Status Report" from Arlington Orthopedic Associates, P.A., dated July 21, 2011,

that states that she "needs to sit down every 30 minutes for 3-4 minutes at a time." P. Jan.

31, 2013 App. 211.

C

1

Esparza has adduced no evidence that would permit a reasonable jury to find that she

was "disciplined" for sitting at any point *after* Wilson received notice of her need for an

accommodation. She states that, "although this was not set out in the [July 18, 2011 final

written warning,] Wilson verbally warned [her] about sitting to perform her duties which he

claimed to have received complaints from associates and customers." P. Feb. 7, 2013 Br. 10.

Esparza does not allege, however, either that she requested to be able to sit as a "reasonable

accommodation" before she received this July 18, 2011 warning, or that Wilson "disciplined"

her after receiving the July 21, 2011 letter documenting her need to sit. Accordingly, to the

extent Esparza bases her failure to accommodate claim on Wilson's disciplining her for

sitting while lobby leading, this basis for her claim fails.

2

Nor could a reasonable jury find that BOA failed to accommodate Esparza's disability

by "disciplin[ing] [her] for leaving the Bank for doctor's appointments because the assistant

manager was not on duty." *Id*. at 15. This allegation relates to an issue identified in the Final

Written Warning issued to Esparza on July 18, 2011, which stated: "Your failure to meet

- 26 -

expectations is as follows: . . . Judgment.  Leaving the banking center unattended without a

supervisor being present to handle overrides, customer request, and in case of bank robbery."

P. Jan. 31, 2013 App. 7.  Esparza acknowledges that the reason she was disciplined was not

because she left for a doctor appointment *per se*, but because she left at a time when the

assistant manager was not on duty.  A reasonable jury could not find on the basis of

Esparza's evidence that BOA failed to accommodate her.[11]

3

To the extent Esparza bases her failure to accommodate claim on Wilson's alleged

failure to respond to Esparza's attempts to "discuss with Wilson her medical condition,

physical limitations, and need for intermittent leaves of absence," P. Jan. 2, 2013 Br. 14,

Esparza has not pointed to any accommodation she required (other than her request for a

transfer, which the court addresses below) that Wilson refused to discuss with her.  She has

conceded that she received all of the intermittent leave she required, *see* Ds. Dec. 14, 2012

App. 13, that, as a Banking Center Manager, she was permitted to sit as often as she needed,

*id.* at 6, 7-8, 12.  And, as discussed above, she has not pointed to any other accommodation

she requested but was not given.  Vague allegations that Wilson failed to respond to Esparza

regarding "her medical condition, physical limitations, and need for intermittent leaves of

---

[11]The July 21, 2011 "Patient Status Report,"  which stated that Esparza "needs to sit
down every 30 minutes for 3-4 minutes at a time," P. Jan. 31, 2013 App. 211, would not have
put BOA on notice that Esparza needed to leave the bank premises as an accommodation for
her disability.

absence," P. Jan. 2, 2013 Br. 14, are insufficient to enable a reasonable jury to find that defendants failed to engage in the interactive process that the ADA requires.

4

Finally, a reasonable jury could not find that defendants failed to accommodate Esparza's disability based on a failure to transfer her to a standard hour banking center. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). "The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). "A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." *Id.* at 316. Furthermore, "[f]or the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have." *Foreman v. The Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997).

Esparza has not adduced evidence that would enable a reasonable jury to find that there was a vacancy for which she was qualified at any of BOA's standard hour banking centers. She argues that defendants failed to engage in the interactive process regarding her request for accommodation, yet she acknowledges that Wilson spoke with Gonzalez (the Consumer Market Executive) regarding Esparza's request, and that Wilson told Esparza exactly what she would have to do to obtain a transfer: "post[] for an open position, appl[y]

for and g[e]t it." P. Jan. 2, 2013 Br. 14.  Accordingly, to the extent Esparza bases her failure

to accommodate claim on Wilson's refusal to reassign her to a position in a standard hour

banking center, this claim fails.

In sum, Esparza has failed to present evidence that would enable a reasonable jury to

find that defendants failed to accommodate her disabilities, and the court grants summary

judgment dismissing this claim.

## VI

Defendants also move for summary judgment on Esparza's ADA and TCHRA

discrimination and retaliation claims.[12]

## A

Esparza's discrimination and retaliation claims are analyzed under the *McDonnell*

*Douglas* burden shifting framework.  *See, e.g., Seaman*, 179 F.3d at 300 (holding that

*McDonnell Douglas* framework, which is used in Title VII cases, applies to ADA cases when

only circumstantial evidence of discrimination is offered); *Reed v. Neopost USA, Inc.*, 701

F.3d 434, 439 (5th Cir. 2012) (holding that *McDonnell Douglas* burden-shifting framework

applies to TCHRA cases where plaintiff relies on circumstantial evidence).  The court will

assume that Esparza has satisfied the prima facie elements of her ADA discrimination and

retaliation claims.

---

[12]It is unclear whether Esparza is asserting an ADA-based discrimination claim,
retaliation claim, or both.  The court will assume that she is asserting both because, as
explained below, Esparza's inability to come forward with any evidence of pretext is
dispositive, whether the claim is for discrimination, retaliation, or both.

B

1

Esparza maintains that she was treated less favorably than her presumably non-disabled Assistant Banking Center Manager, Mungia, because when Mungia requested to be transferred to a different banking center, the request was granted, but when Esparza requested to be transferred to a standard hour banking center, the request was denied.

2

Defendants have met their burden of producing evidence of a legitimate, nondiscriminatory reason for denying Esparza's request to be transferred.  At the time Esparza requested to be transferred, no vacant Banking Center Manager positions at standard hour banking centers were available.

3

Esparza is therefore obligated to "offer sufficient evidence to create a genuine issue of material fact . . . that [BOA's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks and citation omitted) (describing standard in context of age discrimination case).  Esparza has failed to meet her burden.  She cites her declaration, in which she avers that when she requested to be transferred to a standard hour banking center, Wilson initially responded that he did not have any standard hour locations in his district, which was not true because eight of the direct-reporting banking centers assigned to Wilson at that time were standard hour locations.  And she maintains that Wilson told her that, if she wanted to

transfer, she would need to find a job on BOA's career site, post, interview, and if she got the job, she could transfer.  But even when this evidence is viewed in a light most favorable to Esparza, none of it would enable a reasonable jury to find that BOA's proffered reason for not transferring Esparza to a standard hour bank—because there were no vacant Banking Center Manager positions—was pretextual.  In fact, Esparza has adduced no evidence that would enable a reasonable jury to find that BOA failed to transfer to her to a standard hour banking center for any reason other than that a Banking Center Manager position was not open at the time.  Accordingly, defendants are entitled to summary judgment dismissing Esparza's ADA discrimination and retaliation claims based on BOA's failure to transfer her to a standard hour banking center.

C

1

Esparza also appears to bring ADA discrimination and retaliation claims based on her termination.  She alleges "[t]he very close timing between [her] internal discrimination complaint, to her requests for accommodations and for leave under the FMLA, establish the required causal connection."  P. Feb. 7, 2013 Br. 19.  In addition, she alleges that she was replaced by a person who is not disabled.

2

Assuming that Esparza can establish a prima facie case of discrimination and retaliation under the ADA, the court concludes that defendants have met their burden of production and that, as explained above, Esparza has failed to produce evidence that would

- 31 -

enable a reasonable jury to find that BOA's proffered reasons for terminating Esparza's employment are pretextual.  Accordingly, the court grants defendants' motion for summary judgment dismissing Esparza's ADA discrimination and retaliation claims to the extent they are based on her termination.

D

In addition to her ADA claims, Esparza brings a claim under the TCHRA, which prohibits an employer from discriminating against or discharging an employee because of the employee's disability.  *See* Tex. Lab. Code Ann. § 21.051.  Because the law governing claims under the ADA and the TCHRA is identical, *see Cortez v. Raytheon Co.*, 663 F.Supp.2d 514, 520-21 (N.D. Tex. 2009) (Kinkeade, J.) (citing *Shackelford*, 190 F.3d at 404 n.2), Esparza's failure to raise a genuine issue of material fact on her ADA claims dictates that her TCHRA claim be dismissed as well.  Accordingly, the court grants defendants' motion for summary judgment and dismisses Esparza's TCHRA claim.

VII

Esparza moves for partial summary judgment on her ADA failure to accommodate claim and on BOA's affirmative defenses.  Because in granting defendants' motion for summary judgment, the court is dismissing all of Esparza's claims, the court denies as moot Esparza's motion for partial summary judgment.

* * *

For the foregoing reasons, the court grants defendants' motion for summary judgment, denies Esparza's motion for partial summary judgment as moot, and dismisses this case with prejudice by judgment filed today.

**SO ORDERED.**

September 17, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE